**IN THE COURT OF APPEALS OF IOWA**

No. 17-0607
Filed June 21, 2017

**IN THE INTEREST OF J.M.,**
**Minor Child,**

**J.M., Father,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Scott County, Christine Dalton Ploof, District Associate Judge.

　　The father appeals from the juvenile court order terminating his parental rights to his biological child. **AFFIRMED.**

　　Timothy J. Tupper of Tupper Law Firm, Davenport, for appellant father.

　　Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

　　Michael A. Woods of Zamora, Taylor, Woods & Frederick, Davenport, guardian ad litem for minor child.

　　Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

The father appeals from the juvenile court's order terminating his parental rights to his biological child, J.M. The father does not dispute whether the statutory grounds for termination have been met. Rather, he maintains he should be given additional time to work toward reunification with J.M. and claims termination of his parental rights is not in J.M.'s best interests.

**I. Background Facts and Proceedings.**

The Iowa Department of Human Services (DHS) first became involved with this family in September 2015, before J.M.'s birth. At the time, the family was comprised of J.M.'s mother,[1] the father, and J.M.'s three half-siblings.[2] The department's involvement began after J.M.'s mother took the eight-month-old half-sibling, K.F., to the emergency room because K.F. had limited movement on one-half of her body and her feet were bluish in color. While there, doctors determined K.F. had differently aged rib fractures and was malnourished. The two older children were examined and were found to have bed bug bites and marks indicating frequent blunt-force impacts. The oldest child, A.H., was five years old at the time; she reported the father had been hitting her and the other two children with his hands and with objects—including a coat hanger and a belt. A.H. also reported her mother had been present some of the times the father beat them. J.M.'s three half-siblings were then removed from the parents' care.

---

[1] J.M.'s mother filed a notice of appeal, but she then failed to file a petition within fifteen days. *See* Iowa R. App. P. 6.201(1)(b). Our supreme court dismissed the mother's appeal. *See* Iowa R. App. P. 6.201(3). The parental rights of J.M.'s legal father were also terminated; he does not appeal.

[2] The three half-siblings share a mother with J.M., but they are not the children of this father, and they are not at issue in this appeal.

In November 2015, the father was jailed for multiple counts of felony child endangerment. The father was unable to post bond, and he remained in jail on the pending charges.

J.M. was born in February 2016 and was removed from the parents' care by court order the day after his birth. He was immediately placed in the home of his maternal relatives—the same home in which his half-siblings were placed.

The father ultimately pled guilty to two counts of felony child endangerment. He received two five-year sentences to be served concurrently. He was able to have two visits with J.M. while he remained in the local jail, but he had no visits after he was transferred to prison in July 2016.

The termination hearing took place on March 15, 2017. The father appeared telephonically from prison. He testified he had taken a number of courses while incarcerated, including classes geared toward parenting skills and cognitive restructuring. He also testified he was scheduled for parole release in May 2017. His testimony was in conflict with a report to the court filed by the DHS caseworker, which indicated the department of correction's website listed the father as eligible for supervised discharge on or about February 26, 2018.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d), (h), (i), and (m) (2017). The father appeals.

## II. Standard of Review.

We review termination-of-parental-rights proceedings de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).

**III. Discussion.**

The father maintains termination of his parental rights is not in J.M.'s best interests. He asserts the court should have given him additional time to work toward reunification, claiming he could have taken care of J.M. once he was released from prison in May 2017. First, we note that it is unclear to us that the father was scheduled to be paroled in May 2017; nothing in the record explains the conflict in dates given by the father and the DHS caseworker. Additionally, even if the father was going to be released within a few months, the father has next to no relationship with J.M. The father saw J.M. twice after he was born in February 2016 before the father went to prison in July 2016; since going to prison, the father has not had a visit with J.M. J.M. has lived with his half-siblings at the home of his maternal relatives since immediately following his birth. It is the only home he has ever known. The father has not seen or been a part of J.M.'s life because of his actions of perpetrating serious violence against J.M.'s young half-siblings. While the father testified he had taken parenting and cognitive-restructuring classes since pleading guilty to the charges of child endangerment, there is nothing in the record before us that suggests he is now an appropriate custodian for another small child. We agree with the juvenile court; additional time for reunification was not warranted in this case. *See* Iowa Code § 232.104(2)(b) (requiring a court that is continuing placement for an additional six months to "enumerate specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period").

We also agree that termination of the father's parental rights is in J.M.'s best interests. *See id.* § 232.116(2). The caseworker testified that J.M. and his half-siblings are each "doing very, very well" at the home of the maternal relatives; they go to their relatives "with ease" and "they share their needs." The children are safe and comfortable at the home and the relatives intend to adopt all of the children if the parents' rights were terminated. It is in J.M.'s best interests to maintain stability and achieve permanency with the only family he has ever known. *See id.* (considering the child's safety; the best placement for furthering the long-term nurturing and growth of the child; the physical, mental, and emotional condition and needs of the child; and the length of time the child has lived in a stable environment and the desirability of maintaining that environment).

We affirm the termination of the father's parental rights.

**AFFIRMED.**